UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Vertex Towers, LLC<br><br>    Plaintiff<br><br>v.<br><br><br>Town of Millbury<br><br>    Defendant | CASE NO. 1:25-cv-11408 |

**COMPLAINT**

1. This action arises out he Town of Millbury Planning Board (the "Planning Board")'s unlawful denial of the application by Vertex Towers, LLC ("Vertex" or "Plaintiff") for a Special Permit (the "Special Permit Application") to permit the construction and operation of a multi-user personal wireless services facility (the "Facility") to be located at 269 West Main Street, Millbury, MA 01527 (the "Premises"). The denial is contained in a Decision attached as Exhibit "1" (the "Decision").

2. The Planning Board's denial is in direct violation of Section 704 of the Telecommunications Act of 1996 ("TCA"), codified at 47 U.S.C. §332(c)(7) *et seq.*, for the following reasons:

    a.   the Decision is not supported by substantial evidence in a written record;

    b. there is a significant gap in wireless coverage, there is no viable alternative, and the denial materially inhibits the provision of wireless services, including the ability to introduce new services or otherwise improve the existing services;

    c. the denial has the effect of prohibiting the provision of personal wireless services.

3. Additionally, as a pendant state law claim, the Plaintiff seeks an annulment of the Decision under M.G.L. Chapter 40A, §17 as exceeding the authority vested in the Zoning Board under Massachusetts General Law and is arbitrary and capricious and without basis in law or fact.

4. The Decision reflects an abuse of the Board's discretion, and is in excess of the Board's authority, arbitrary, capricious and based on legally untenable grounds.

5. As a result of these violations and unlawful acts, the Plaintiff seeks an injunction and declaration from this Honorable Court annulling the Decision, and/or directing the Town to approve the Special Permit Application, and issue all other permits and approvals necessary to construct, maintain, and operate the Facility at the Premises.

## PARTIES

6. Plaintiff Vertex Towers, LLC is a Massachusetts limited liability company with a with a mailing address of P.O. Box 680, Medfield, MA 02052. Vertex is engaged in the business of developing sites for the deployment of "personal wireless services facilities" as that term is defined by federal law, 47 U.S.C. §332(c)(7)(C)(ii) ("Personal Wireless Services Facilities"). Vertex develops these sites for licensed providers of "personal wireless services" as that term is defined by federal statute, 47 U.S.C. §332(c)(7)(C)(i) ("Personal Wireless Services Providers").

7. Plaintiff is the tenant under a ground lease with Robert L. Pearson, Trustee of the Pearson Family Trust u/d/t dated May 24, 2004, owners of the Premises, for a personal wireless services facility to be located on a portion of the Premises.

8. The Defendant Town of Millbury is a municipality constituted and existing under the laws of the Commonwealth of Massachusetts.

9. The Planning Board is a five-member political subdivision of the Town of Millbury and has been delegated the authority by the Town to, among other things, approve applications for special permits for personal wireless service facilities under the Town of Millbury Zoning Bylaws (the "Bylaws").

## JURISDICTION AND VENUE

10. The Plaintiff's claims arise under the following sections of United States Code, 47 U.S.C. §332(c)(7), the Telecommunications Act of 1996 or "TCA":

   a. 47 U.S.C. §332(c)(7)(B)(iii), which requires any decision denying a request to place, construct, or modify a personal wireless service facility to be supported by substantial evidence contained in a written record;

   b. 47 U.S.C. §332(c)(7)(B)(i)(II), which states that the regulation of the placement, construction, and modification of personal wireless service facilities by any state or local government or instrumentality thereof shall not prohibit or have the effect of prohibiting the provision of personal wireless services; and

11. 47 U.S.C. §332(c)(7)(B)(iv) states that any person adversely affected by any final action or failure to act by a state or local government or any instrumentality thereof pursuant to the aforementioned sections of United States Code may commence an action within 30 days after such final action.

12. Although the TCA preserves some traditional local zoning authority over the siting of wireless services facilities, "the methods by which siting decisions are made is now subject to

judicial oversight. Therefore, denials subject to the TCA are reviewed by [a] court more closely" than other types of zoning decisions to which federal courts generally accord greater deference.[1]

13. The Plaintiff's state law claims arise under Massachusetts General Laws Chapter 40A.

14. This court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, which grants district courts original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States.

15. This court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

16. Venue is proper pursuant to 28 U.S.C. § 1392(b)(1) in that the defendants reside in this district, and pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred here.

## STATEMENT OF FACTS

### I. Personal Wireless Services Facilities

17. The Plaintiff builds, owns and operates Personal Wireless Service Facilities, on and at which it leases space to Personal Wireless Service Providers.

18. Section 151 of the TCA establishes a national policy to "make available, so far as possible, to all people of the United States, without discrimination . . . a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of national defense, [and] for the purpose of promoting safety of life and property through the use of wire and radio communications." 47 U.S.C. § 151.

---

[1] *Cellular Tel. Co. v. Town of Oyster Bay,* 166 F.3d 490, 493 (2d Cir. 1999).

19. To help meet these policy goals, the Plaintiff builds and operates wireless and broadcast towers, and related equipment, known under federal statute as Personal Wireless Service Facilities, so that Personal Wireless Service Providers can provide service to local businesses, public safety entities, and the general public. To advance the national policies enumerated under 47 U.S.C. § 151, the Plaintiff collaborates with Personal Wireless Service Providers to ensure there is a network of "cell sites," each of which consists of antennas and related equipment designed to send and receive radio signals.

20. To determine the appropriate location of cell sites, engineers use complex computer programs to complete propagation studies. These propagation studies are based, in part, on the boundaries of the existing and planned coverage, the topography of the surrounding land, the presence or absence of structures, and other factors. To provide reliable service to users, coverage from cell sites must overlap in a grid pattern resembling a honeycomb. For a wireless network to perform, cell sites must be located, constructed, and operated so that reliable service can be achieved. If there is no functioning cell site within a given area, or if the cell sites around an area lack sufficient capacity to handle the amount of customer demand for limited wireless spectrum, there will not be reliable service for customers within that area, and customers who live or travel in the area will experience an unacceptable level of dropped calls and call connection failures.

21. The Plaintiff identified the Premises as an appropriate and available location for the installation of a wireless telecommunications facility to fill the substantial and significant gap in wireless service. A number of factors determine an appropriate and available location for the installation of a wireless telecommunications facility to fill the substantial and significant gap in wireless service, including but not limited to topography, physical obstructions, foliage, antenna

height, operating frequency and line of sight, as well as landowner willingness to enter into a lease agreement.

22. The coverage gap results in nonexistent, unreliable, or degraded wireless service for customers of Personal Wireless Service Providers.

23. After an exhaustive review of the coverage needs in this area of Millbury all existing facilities, other tall structures and other raw land possibilities, the Plaintiff determined that the Facility at the Premises is the only feasible location to close the significant gap in wireless coverage.

24. Upon identifying the site as the only feasible location to close the gap, the Plaintiff entered into an Option and Lease Agreement with the owner of the Premises granting the Plaintiff the exclusive right to locate, construct and operate a personal wireless services facility on a portion of the owner's property.

## II. Federal Statutory Control Over Siting of Personal Wireless Service Facilities

25. Section 332(c)(7) of the TCA, 47 U.S.C. § 332(c), governs federal, state, and local government regulation of the siting of "personal wireless service facilities" such as the Facility proposed by the Plaintiff. It provides, in relevant part, that:

(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof –

(I) shall not unreasonably discriminate among providers of functionally equivalent services and

(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

(ii) A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.

(iii) Any decision by a state or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record. 47 U.S.C. § 332(c)(7)(B).

(iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.

26. The TCA further provides that any person adversely affected by a state or local government's act, or failure to act, that is inconsistent with § 332(c)(7) may seek review in the federal courts, and the court "shall hear and decide such action on an expedited basis." 47 U.S.C. § 332(c)(7)(B)(v).

**III Description of Proposed Personal Wireless Service Facility**

27. Plaintiff is proposing to erect a 115' foot tall monopole-style telecommunications tower (119' to top of lightning rod) within a 40' x 60' square foot fenced compound on the Premises to close a significant gap in wireless coverage for Personal Wireless Service Providers.

28. The Premises is a large, substantially undeveloped parcel in the S-1 Suburban I Zoning District.

29. Section 27.1.1 of the Town's Zoning Bylaw governing Wireless Communications Facilities provides that "[n]o personal wireless service facility shall be placed, constructed or modified within the Town except upon issuance of a special permit from the Planning Board."

**IV. Application for Relief from the Town of Millbury Planning Board**

30. On January 27, 2025, the Plaintiff filed the Special Permit Application requesting a Special Permit pursuant to Section 27.1.1. of the Town's Zoning Bylaw to permit construction of the Facility.

31. Concurrent with the Special Permit Application, the Plaintiff requested several waivers from the Town's Zoning Bylaw (pertaining to a certain setback requirement and dimensional restriction as well as a requirement that utilities be underground) (the "Waivers").

32. Concurrent with the Special Permit Application, the Plaintiff also applied for Site Plan Review from the Planning Board for the Facility pursuant to Section 12.4 of the Town's Zoning Bylaw ("Site Plan Review").

33. Concurrent with the Special Permit Application, the Plaintiff also applied for a Stormwater Management Permit from the Planning Board for the Facility pursuant Section 13.15 of the Town's Municipal Code (the "Stormwater Management Permit").

34. Accompanying the Special Permit Application, the Plaintiff filed with the Planning Board:

    a. Application for Special Permit

    b. Application for Site Plan Review

    c. Application for Stormwater Permit

    d. Filing Fees

    e. Abutters List (to be prepared by Town)

      f.    Letter of Authorization

      g.    Visibility Demonstration Public Notice

      h.    Project Narrative

      i.    TOWAIR (FAA Analysis re No Hazard to Air Navigation)

      j.    Report of Site Acquisition Specialist

      k.    Report of RF Engineer and RF Coverage Maps

      l.    Site Emissions Report

      m.   Stormwater Management Report

      n.    Site Plans

35.    During the public hearing process, the Plaintiff also filed with the Planning Board the following supplemental materials:

      SUPPLEMENT NO. 1

      o.    Photos from Visibility Demonstration and Photo Simulations

      SUPPLEMENT NO. 2

      p.    Response to Planning Department Comments

      q.    Revised Stormwater Management Report

      r.    Revised Site Plans

      SUPPLEMENT NO. 3

      s.    Request for Waiver

      t.    Illicit Discharge Compliance Statement

      u.    Revised Site Plans

36.    All of the Site Plans submitted by the Plaintiff were stamped by a licensed professional engineer.

**V. The Public Hearings and Decision**

37.     On February 24, 2025, March 10, 2025 (continued without testimony), March 24, 2025 (continued without testimony) and April 14, 2025, the Planning Board held public hearings on the Special Permit Application after providing notice as required by General Laws ch, 40A.

38.     As part of the Special Permit Application and at the Planning Board public hearings, the Plaintiff provided substantial written and oral testimony, including radio frequency coverage maps and testimony, demonstrating that there is a significant gap in personal wireless services in Millbury that could be addressed through the proposed Facility, and that there were no feasible alternatives to the proposed Facility.

39.     As part of the Special Permit Application and at the Planning Board public hearings, the Plaintiff also provided substantial written and oral testimony that the proposed use is in harmony with the general purpose of the Town's Zoning Bylaw governing Wireless Communications Facilities.

40.     As part of the Special Permit Application and at the Planning Board public hearings, the Plaintiff also provided substantial written and oral testimony demonstrating compliance with the Town's Zoning Bylaw governing Wireless Communications Facilities other than those provisions for which waivers were requested.

41.     As part of its review, the Planning Board retained a consulting licensed professional engineer at the Plaintiff's expense to review the Special Permit Application and Site Plans.

42.     On February 20, 2025, the Town Planner and the Town's consulting licensed professional engineer conducted a site visit to the Premises, accompanied by representatives of the Plaintiff.

43. During the Town's review of the Special Permit Application, the Town Planner and the Town's consulting licensed professional engineer raised several questions with respect to the Special Permit Application, Site Plan Review application and Stormwater Permit Application, to which the Plaintiff responded and made substantial revisions to the Site Plans and provided substantial supplemental data.

44. During the public hearing process, the Planning Board received a letter from the Fire Chief of the Town of Millbury specifically addressing access to the proposed Facility and specifically indicating that the proposed access driveway would suffice from a public safety perspective.

45. On April 14, 2025, after receiving comments and recommendations from the Town's consulting licensed professional engineer, the Town Planner provided to the Planning Board Comments and Recommended Conditions of Approval with respect to the Special Permit Application and requested waivers as well as comments and recommendations with respect to the Site Plan Review Application and Stormwater Management Permit Application.

46. At each of the Planning Board public hearings, each member of the Planning Board was present and was permitted to ask questions of the Plaintiff and the Town Planner.

47. At each of the Planning Board public hearings, members of the public were present and permitted to comment on the Special Permit Application (as well as the Site Plan Review Application and Stormwater Management Permit Application) and ask questions to the Planning Board.

48. On April 14, 2025, the Planning Board voted to GRANT the requested Waivers to the Town's Zoning Bylaw governing Wireless Communications Facilities.

49. On April 14, 2025, the Planning Board voted to GRANT Plaintiff' Site Plan Review Application.

50. On April 14, 2025, the Planning Board voted to APPROVE the Stormwater Management Permit.

51. In its decision to GRANT Site Plan Review and APPROVE the Stormwater Management Permit, the Planning Board made the following findings:

> "The Plan and submitted materials are generally in conformance with applicable Section 12 of the Town of Millbury's Zoning Bylaws [which includes the Town's Site Plan Review regulations] and Ch. 13.15 of the Milbury Municipal Code [regarding the Town's Stormwater Management Permit Regulations].

52. On April 14, 2025, members of the Planning Board voted 3-2 to APPROVE the Special Permit Application.

53. However, under M.G.L. Chapter 40A, §9, a vote to grant a special permit requires a vote of at least four members of a five-member board.

54. Because the Planning Board voted 3-2 to APPROVE the Special Permit Application, the Special Permit Application was legally deemed DENIED under Massachusetts law.

55. In the Decision denying the Special Permit Application, the Planning Board made only the following findings and reasons:

> "a. Due to a concern for safety of the proposed access drive to the wireless communications facility from the site entrance."

12

**Count 1:**
**Violation of 47 U.S.C. §332(c)(7)(B)(iii)**
**Failure to Support the Denial with Substantial Evidence in the Written Record**

56. The allegations set forth in paragraphs 1 through 55 are restated and incorporated by reference herein.

57. 47 U.S.C. §332(c)(7)(B)(iii) requires that any denial of a personal wireless service facility be "supported by substantial evidence contained in a written record."

58. It is the Defendants' burden to produce substantial evidence supporting its denial of the Plaintiff's application.

59. Substantial evidence requires that municipalities base their decisions on standards delineated in state and local zoning laws and not on unwritten, vague or purely subjective standards.[2]

60. The Plaintiff's Special Permit Application meets all of the criteria set forth under the City's Zoning Bylaw Article for a wireless communications facility other than those provisions for which waivers were requested and granted by the Planning Board.

61. The denial is based on purely subjective and vague standards, and ignores all of the evidence submitted by the Plaintiff with the Special Permit Application and discussed with the Planning Board at the public hearings.

62. The Plaintiff produced Site Plans prepared by licensed professional engineers meeting all of the requirements for Site Plan Approval.

63. The Plaintiff clearly demonstrated with scientific evidence and sound methodology from qualified radio frequency engineers that there is a significant gap in wireless coverage of Personal Wireless Service Providers in this area of Millbury.

---

[2] *ATC Realty, LLC. V Town of Kingston, N.H.*, 303 F.3d 91, 94 (1st Cir. 2002).

13

64. The Plaintiff clearly demonstrated with reports and maps from qualified site acquisition specialists that there is no feasible alternative to the proposed Facility.

65. The Plaintiff clearly demonstrated that denial of the Special Permit Application would materially inhibit the provision of wireless services by Personal Wireless Service Providers, including the ability to introduce new services or otherwise improve existing services.

66. The Planning Board failed to put forth any reasonable basis for the denial and reached its decision based upon unscientific and anecdotal evidence as opposed to the scientific evidence and testimony offered by the Plaintiff.

67. For all of the foregoing reasons and evidence contained herein, contrary to the TCA, the Board unequivocally fails to base its decision on substantial evidence in the written record in violation of 47 U.S.C. §332(c)(7)(B)(iii).

## Count 2
### Violation of 47 U.S.C. §332(c)(7)(B)(i)(II)
### Prohibition of Wireless Services

68. The Plaintiff hereby adopts and incorporates by reference as if fully stated herein the allegations contained in paragraphs 1 through 67.

69. Article VI, Clause 2 of the United States Constitution, commonly known as the Supremacy Clause, provides, in relevant part, that "[t]his Constitution, and the laws of the United States which shall be made in pursuance thereof . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding."

70. The TCA governs the regulation of the placement, construction, and modification of personal wireless service facilities, and under the Supremacy Clause, preempts other laws, regulations, ordinances, or by-laws affecting such facilities to the extent that such laws,

regulations, ordinances, and by-laws conflict with federal law.

71. The Application constitutes a request to construct a "personal wireless service facility" within the meaning of the TCA, and, as such, is entitled to the protection of Section 332(c)(7)(B).

72. Pursuant to 47 U.S.C. § 332(c)(7)(B)(i)(II), "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government of instrumentality thereof . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II).

73. There is a significant gap in personal wireless service in the area surrounding the Premises.

74. There is no existing structure or property in or near the search area in the vicinity of the Premises that is both reasonably available and technologically feasible to remedy the significant gap in personal wireless service in the area.

75. The Premises is the only feasible alternative to remedy the significant gap in personal wireless service.

76. The Planning Board's denial of the Application effectively prohibits the Plaintiff, in collaboration with Personal Wireless Service Providers, from providing personal wireless service in the significant gap area.

77. The Planning Board's denial of the Special Permit Application also materially inhibits the provision of wireless services, including the ability to introduce new services or otherwise improve existing services.

78. Consequently, the Planning Board's denial of the Special Permit Application is in violation of, and preempted by, Section 332(c)(7)(B)(i)(II) of the TCA, and should be set aside

and enjoined by the Court on that basis. Further, this Court should exercise its power to issue an order directing the Town to approve the Special Permit Application, and grant all other permits and approvals necessary to construct, maintain, and operate the Facility at the Premises.

**Count 3:**
**Violation of M.G.L. Chapter 40A, Section 17 (Judicial Review)**
**Illegal, Arbitrary and Capricious and Unreasonable**

79. The Plaintiff hereby adopts and incorporates by reference as if fully stated herein the allegations contained in paragraphs 1 through 78.

Plaintiff's Facility fully complies with all of the requirements of the Town's Zoning Bylaw governing Wireless Communications Facilities (other than those provisions for which waivers were requested and granted).

80. The proposed use is fully in harmony with the intent and purposes of the Town's Zoning Bylaw governing Wireless Communications Facilities.

81. The proposed use is fully in harmony with applicable federal law with respect to Personal Wireless Services Facilities that preempts the Town's Zoning Bylaws with respect to Wireless Communications Facilities.

82. The Planning Board misapplied Massachusetts law, and acted illegally, arbitrarily and capriciously, and unreasonably and without sufficient evidentiary basis in denying the Special Permit Application.

83. The Planning Board's denial of the Special Permit Application is unreasonable, illegal, and arbitrary and capricious, exceeds the board's authority under Massachusetts law, lacks sufficient findings and is based on errors of law.

WHEREFORE, the Plaintiff respectfully requests that this honorable court review this matter on an expedited basis pursuant to 47 U.S.C. §332I(7)(B)(iv), make the following rulings, and grant the following requests for relief:

A. A declaration and judgment that the Planning Board's actions violated Section 332(c)(7)(B)(iii) of the Act and are therefore void and invalid;

B. A declaration and judgment that the Planning Board's actions are preempted by Section 332(c)(7)(B)(i)(II) of the Act and are therefore void and invalid;

C. Declare that the Decision was based on legally untenable grounds and is unreasonable, whimsical, arbitrary and capricious in violation of M.G.L. Chapter 40A and must be annulled;

D. A declaration of the respective rights and obligations of the parties;

E. An order mandating that the Town grant approval of the Special Permit Application and/or directing the Town to approve the Special Permit Application, and issue all other permits and approvals necessary to construct, maintain, and operate the Facility at the Premises.

F. An award of Plaintiff's costs of suit; and

G. Such other and further relief as the Court deems just and proper.

Respectfully Submitted,

Vertex Towers, LLC

By its attorneys,

Parisi Law Associates, P.C.
By: /s/ Francis D. Parisi, Esq.
Francis D. Parisi, Esq. (BBO #548951)
225 Dyer Street
Providence, RI 02903
Telephone: (401) 447-8500
Email   fparisi@plapc.com
Dated: May 19, 2025

/s/ Philip B. Posner
Philip B. Posner (BBO #546103)
223 Laws Brook Road #206
Concord, MA 01742
617 413 3209
Land.Law@Verizon.Net
Dated: May 19, 2025